# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGITA MILLER,<br>    Plaintiff,<br>  v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | NO. EDCV 16-1822-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff Brigita Miller filed a Complaint on August 24, 2016, seeking review of the denial by the Commissioner of the Social Security Administration ("SSA") of her applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). (Dkt. No. 1.) On February 16, 2017, Defendant filed an Answer to the Complaint. (Dkt. No. 17.) Pursuant to 28 U.S.C. § 636(c), all parties have consented to proceed before the undersigned United States Magistrate Judge for all further proceedings, including entry of Judgment. (Dkt. Nos. 11, 12, 13.) On June 13, 2017, the parties filed a "Joint Stipulation" ("Joint Stip.") setting forth the disputed issue in this case. (Dkt. No. 22.) The matter is now under submission and ready for decision.

1

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 11, 2011, Plaintiff filed applications for Title II DIB and Title XVI SSI benefits, alleging in both applications a disability onset date of April 8, 2010. (AR 30, 155.) Plaintiff was born on February 26, 1971, and was 41 years old at the time of the administrative proceedings, thus classified as a younger individual for disability purposes. (AR 58, 68.)

A first hearing was held before an Administrative Law Judge ("ALJ") on October 25, 2012. (AR 96-124.) Plaintiff, represented by counsel, testified that she had a car accident in April 2011 where she suffered a broken right leg, and she has been intermittently using a cane since then. (*See* AR 100-01; *see also* AR 58-59.) On December 19, 2012, the ALJ issued a first decision denying Plaintiff's DIB and SSI applications. (*See* AR 155-65.) On July 7, 2014, the Appeals Council vacated the ALJ's denial and remanded the case for further proceedings. (AR 170-74.)

A second hearing was held before a different ALJ on February 10, 2015. (AR 49-95; *see also* AR 30.) Plaintiff, again represented by an attorney, testified, along with a Vocational Expert ("VE"), Sandra Fioretti, a medical expert, Arnold Ostrov, and a psychological expert ("PE"), David Glass Meyer. (AR 49.) The ALJ examined the PE, who opined about Plaintiff's depression and anxiety. (AR 55-56.) The medical expert appeared by phone and noted that Plaintiff used a cane, apparently on the recommendation of two consultative examiners, but he said that he did not include the use of a cane in his assessment of Plaintiff's residual functional capacity ("RFC").

Plaintiff confirmed at the second hearing that she has fibromyalgia, depression, and anxiety, and she again testified that she broke her right leg in a car accident in April 2011. (AR 69, 76-77.) She said she only takes "regular pain medication" and has never been

prescribed any pain medication, but Dr. Wilson Gomer, her primary care doctor, prescribes her anti-anxiety medications. (AR 70.) Plaintiff said that she has not been able to put full weight on her right leg since her car accident. (AR 76-77.) She uses a cane about three to four times a week. (AR 77.) Her swelling "never goes away," and she has to "put my feet up," but she claimed it does not help. (AR 78.)

At the second hearing, the VE opined that Plaintiff's past relevant work ("PRW") consisted of three jobs at sedentary or light levels: (1) insurance agent, light work; (2) "security supervisor" or "post commander," light; and (3) "directory assistance," sedentary. (AR 86.) The ALJ posed a hypothetical to the VE that posited, among other things, a person limited to a range of sedentary work, standing and walking for 2 hours out of 8-hour day, and no prolonged walking greater than about 15 minutes with the use of a cane. (AR 86-87.) The ALJ also posited sitting limited to 6 hours out of an 8-hour day "with the ability to stand and stretch not to exceed 10 percent of the day" (that is, apparently, 48 minutes a day), occasional use of stairs, and no forceful gripping and grasping. (AR 87.) The VE said that Plaintiff could not do her PRW with those limitations. (AR 87.) However, the VE said that there were three other sedentary jobs that Plaintiff could do even with those limitations: (1) "addresser" (DOT 209.587-010), with 43,000 jobs available nationally; (2) "lens inserter" in the "optical sunglasses industry" (DOT 713.687-026), 11,500 jobs nationally; and (3) "para mutual ticket checker," that is, a person checking betting slips and receipts at a race track, (DOT 219.587-010), 71,800 jobs nationally. (AR 87-89.)

The following exchange then occurred between the ALJ and the VE:

> [ALJ]: Now, if a person – if we were to add to the hypothetical a need to elevate the legs at waist level, at least maybe 15 minutes every two hours, would that impact these jobs?

[VE]: Now, if they are different than the break routine in most jobs, it
         would not, as long as it could be performed on breaks.
             [ALJ]: And what if there was a need to elevate the legs for longer periods
         than that? Anything longer than 15 minutes every two hours? Would that impact
         these jobs?
             [VE]: It would. It would eliminate them, Your Honor.
             [ALJ]: If there were absences from pain or medical treatment greater than
         three or more a month, what would that do to these jobs?
             [VE]: It would eliminate them, Your Honor.

(AR 88-89; bracketed material added.)

Plaintiff's attorney also asked the VE to explain "the methodology that you used to arrive at the numbers that you stated?" (AR 91.) The ALJ noted that Plaintiff's attorney had "already . . . allowed [the VE] to testify as a . . . vocational [expert]." (AR 91.) However, the ALJ said "I will let him [*i.e.,* the VE] answer that, as long as we don't take very much time." (AR 91.) The VE then responded that "I relied upon today . . . the Occupational Employment Statistics [OES] . . . [and c]ensus statistics that are proffered by United Staff Publishing via downloads from the Census Department and the Department of Labor." (AR 91-92.) The VE also testified that he used his "professional judgment" to effectively erode job numbers as he saw fit. (AR 92-93.) The VE also said that he uses "OccuBrowse," which is put out by the same company as Job Browser Pro. (AR 93.)

## SUMMARY OF ADMINISTRATIVE DECISION

On March 13, 2015, the second ALJ issued a decision again denying Plaintiff's DIB and SSI applications. (AR 30-42.) Applying the five-step evaluation process, the second ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April

4

8, 2010, her alleged onset date. (AR 32.) The ALJ next found that Plaintiff has the following severe impairments: (1) obesity; (2) acute coronary syndrome; (3) hypertension; (4) status post right tibia/fibula fracture; (5) post internal fixation; (6) arthritis of both the left and right knees; (7) depression; and (8) anxiety. (AR 32.) The ALJ also noted that Plaintiff's Body-Mass Index ("BMI") of 37 put her over the BMI of 30 required for "obesity." (AR 32-33 and n.1.) The ALJ found that Plaintiff did not meet or equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix. (AR 33.)

The ALJ found that Plaintiff had the residual function capacity ("RFC") to perform a range of sedentary work, with limitations including, among other things: standing or walking for 2 hours out of an 8-hour day, and "no prolonged walking greater than 15 minutes with the use of a cane"; sitting for 6 hours out of an 8-hour day "with the ability to stand stretch [sic] not to exceed 10 percent of the day"; and occasionally climb stairs; "and elevate legs to waist level every two hours for about 15 minutes during breaks and lunch." (AR 34.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. (AR 40.) Nevertheless, at step five the ALJ found that there was still other work that Plaintiff could do, namely the three jobs identified by the VE at the second hearing: (1) addressor, (2) lens inserter, and (3) para mutual ticket taker[1]. (AR 41.) Consequently, the ALJ found that Plaintiff has not been disabled from April 8, 2010, the alleged onset date, through March 13, 2015, the date of the second ALJ's decision. (AR 41-42.)

\\
\\
\\

---

[1] The VE testified that a "para mutual ticket checker" is someone who "usually works at a gambling type of employer, such as a race track or at times gambling casinos and they are basically checking betting slips against cashier receipts" and these are "back office" positions with no public involvement. (AR 89.)

## APPEALS COUNCIL PROCEEDINGS

In August 2015, Plaintiff made a request to the Appeals Council of the SSA seeking review of the ALJ's March 13, 2015 decision. (AR 7, 497.) In a letter to Plaintiff's attorney dated August 14, 2015, the Appeals Council advised Plaintiff that "[y]ou may send us more evidence or a statement about the facts and the law in this case," but the Appeals Council cautioned that "[a]ny more evidence must be new *and* material to the issues considered in the hearing decision dated March 13, 2015." (AR 7 (italics in original).)

On September 16, 2015, Plaintiff's counsel sent a letter and attached exhibits to the Appeals Council in support of Plaintiff's request for review of the ALJ's decision. (AR 497-515 at Ex. 25E.) Plaintiff presented a number of arguments, including an argument that "[t]he jobs cited by the [VE] [are] inconsistent with Ms. Miller's limitations []." (AR 497-99.) In that response to the Appeals Council, Plaintiff did not, however, present any argument about the ALJ's accommodation that allowed for Plaintiff to "elevate legs to waist level every two hours for about 15 minutes during breaks and lunch." (AR 34, 407-515.)

On June 24, 2016, the Appeals Council notified Plaintiff that, notwithstanding the letter brief and the exhibits submitted by Plaintiff and her counsel, it had denied Plaintiff's request for review of the ALJ's March 13, 2015 decision, and therefore the ALJ's decision was the final decision of the Commissioner. (AR 1.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\
\\
\\

# DISCUSSION

## I. <u>Disputed Issue</u>

The parties Joint Submission presents one disputed issue: "Whether the ALJ's determination that Miller's requirement to elevate her legs every two hours for 15 minutes precludes work activity." (Joint Stip. at 5.)

## II. <u>Number of Jobs Available with 15-Minute Breaks</u>

As noted, the second ALJ's RFC determination indicated that Plaintiff could only stand or walk for 2 hours and sit for 6 hours out of an 8-hour day, could not walk for more than 15 minutes without the use of a cane, and would have to "elevate [her] legs to waist level every two hours for about 15 minutes during breaks and lunch." (AR 34.) During the administrative hearing, the VE opined that this last limitation – elevating her legs to waist level every two hours for about 15 minutes – would not prevent Plaintiff from performing the three jobs that the VE had opined that Plaintiff would be able to perform "as long as [the elevation] could be performed on breaks." (AR 88.)

### A. Parties' Arguments

Plaintiff argues that the VE's testimony "is premised and conditioned upon the belief that 15 minute job breaks are inherent in each job," but Plaintiff argues that the VE's assumption is incorrect. (Joint Stip. at 5-6.) Plaintiff asks the Court to take "judicial notice" of relevant labor laws and regulations that contradict the ALJ's adoption of a 15 minute break that would allow Plaintiff to elevate her legs. (*Id.*) Plaintiff argues that "[t]he law requires at most a 10 minute break only, not [] 'at least' a 15 minute break," and that is only required in 9 states. (Joint Stip. at 7.) Plaintiff also argues that, if Plaintiff's break times

8

were occupied with the necessary 15-minute foot elevation, no time would be left to allow Plaintiff "to take care of other personal needs," and Plaintiff argues that "[t]o find otherwise [would require] an accommodation on the part of the employer which is not allowed in determining whether jobs exist[] in the national economy." (Joint Stip. at 7, citing Social Security Ruling ("SSR") 00-1c and *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999).) As discussed below, Plaintiff asks the Court to take notice of information from several websites concerning federal and state law regarding break times. (*See* Joint Stip. at 6-8, 11.) In essence, Plaintiff challenges the VE's determination that numerous jobs exist in the national economy that Plaintiff can perform given her RFC and argue that if no such jobs exist, Plaintiff must be found disabled and awarded benefits.

Defendant argues that, under the Ninth Circuit case of *Meanel v. Apfel,* 172 F.3d 1111 (9th Cir. 1999), Plaintiff has waived this issue because she was represented by counsel at the hearings before the ALJs and in her subsequent appeal to the Appeals Council, but she never raised the issue of the validity of the VE's opinions about the number of available alternative jobs in the national economy that Plaintiff could perform based on her RFC, until she filed suit in this federal court. (Joint Stip. at 9-10, citing, *inter alia, Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended June 22, 1999).)

**B.  Judicial Notice of Information on Government Websites**

The Court first addresses Plaintiff's requests for judicial notice. Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under Rule 201, the court can take judicial notice of public records available from reliable Internet sources such as websites run by government agencies. *See Daniels-Hall v. Nat'l Education Assoc.*, 629 F.3d 992, 999 (9th Cir. 2010)

(taking judicial notice of information on the websites of two school districts as they were government entities); *see also Paralyzed Veterans of America v. McPherson,* No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 89, 2008) ("information on government agency websites has often been treated as properly subject to judicial notice"). The Court will therefore take judicial notice of the information from the websites of the Office of Personnel Management, Department of Labor, and California Industrial Welfare Commission.

### C. Agency's "Limited Burden" at Step Five

The claimant bears the burden at steps one through four to show that she is disabled, or that she meets the requirements to proceed to the next step, and the claimant bears the ultimate burden to show that she is disabled. *Molina*, 674 F.3d at 1110; *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify other work that the claimant can perform in light of her RFC and her age, education, and work experience. *See* 20 C.F.R. §§ 404.1560(c), 416.966; *see also Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009) (limited burden shifts to Commissioner at step five to show that there is work in national economy that claimant can do); *McCollough v. Colvin*, No. 16-CV-1166-JLS(WVG), 2017 WL 2797079, at *2 (S.D. Cal. June 28, 2017) (unpublished) (SSA has limited burden at step five to show that claimant can perform other work in national economy).

The other work identified at step five must exist in "significant numbers" in the "national economy," which is defined as either "the region where you live or in several other regions of the country." 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1566(a), 416.996(a); *see also* 42 U.S.C. § 423(d)(2)(A). The regulations state that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b); *see also* 20 C.F.R. § 404.1566(b).

10

To determine whether such work exists in "significant numbers" in the national economy, an ALJ may use the services of a VE or other specialist. 20 C.F.R. §§ 404.1566(e), 416.966(e). The Agency may also take "administrative notice" of "reliable job information" that is available from a non-exclusive list of "various governmental and other publications" set forth in the regulations, including: (1) the Dictionary of Occupational Titles ("DOT"); (2) County Business Patterns (a publication of the Census Bureau); (3) Census Reports; (4) Occupational Analyses (prepared for the SSA by various State employments agencies); and (5) the Occupational Outlook Handbook, (published by the Bureau of Labor Statistic). *See* 20 C.F.R. §§ 404.1566(d), 416.966(d); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE.") (citation omitted). A VE's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required before the ALJ may rely on the VE's un-questioned or un-rebutted testimony. *Bayliss,* 427 F.3d at 1217-18.

### D. Plaintiff Waived Any Challenge to the Validity of the Numerosity Determination.

Plaintiff argues that the ALJ's RFC determination incorporates an "accommodation" that was not explicitly posited to the VE, and that the VE did not explicitly opine would be available for the three jobs that the VE found that Plaintiff could still do. Plaintiff argues that the "15-minute breaks," to be taken every two hours, apparently three times a day, would not be explicitly authorized under California law, which only requires a 10-minute break every two hours. In other words, in order to take a 15-minute break at a job in California, Plaintiff would have to find an employer who would accommodate such a 15-minute break, since it would not be required by law. Plaintiff also argues that it is questionable whether the labor laws in other states would authorize 15-minute breaks.

At the second hearing, Plaintiff's attorney asked the VE to "explain the methodology that you used to arrive at the [job] numbers that [she] stated." (AR 91.) The VE replied

> I relied upon today at least – sometimes I rely upon the OES, the Occupational Employment Statistics. But today, Census statistics that are proffered by United Staff Publishing via downloads from the Census Department and the Department of Labor. Now this gives us Census code numbers, a Census code categories, which, and I felt the same way about statistics.

(AR 92.) The VE also testified that, if Plaintiff were required to elevate her legs to waist level for 15 minutes every two hours, this requirement "would not" "impact" the jobs she had previously opined that Plaintiff could perform. (AR 88.) Plaintiff's attorney did not ask the ALJ if Plaintiff could submit supplemental briefing regarding the VE's job numbers, and she did not raise new evidence casting doubt on the VE's jobs estimate before the Appeals Council. *Cf. Shaibi v. Berryhill*, __ F.3d __, 2017 WL 3598085, at *7 (9th Cir. Aug. 22, 2017) (plaintiff does not waive challenges to a VE's job estimates if she requests to submit supplemental briefing or interrogatories on those estimates or raises new evidence before the Appeals Council casting doubt on the VE's job estimates).

Nevertheless, relying primarily on the judicially noticeable information offered in this proceeding, Plaintiff argues that substantial jobs do not exist in the national economy that would allow Plaintiff the necessary 15 minutes breaks. (Joint Stip. at 5-8.) Defendant responds that Plaintiff "waived" these arguments by failing to raise them in the hearing before the ALJ or during Plaintiff's request for review from the Appeals Council. (Joint Stip. at 9-10.) For the reasons discussed below, the Court finds that Plaintiff, who was represented by counsel in the administrative proceedings, waived the issue by failing to raise it the administrative appeal process.

Defendant relies on *Meanel v. Apfel,* 172 F.3d 1111 (9th Cir. 1999) (as amended June 22, 1999). (Joint Stip. at 9-10.) In *Meanel*, the Ninth Circuit held that when a claimant who is represented by counsel has failed to raise an issue at the hearing before the ALJ, and failed to present such an issue to the Appeals Council, and only presented the issue for the first time to a reviewing district court, the issue is waived. *Meanel,* 172 F.3d at 111 (citations omitted). The Ninth Circuit noted that "[w]e will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice." *Id.* at 1115.

In a more recent case, *Shaibi v. Berryhill*, No. 15-16849, ___F.3d ___, 2017 WL 3598085 (9th Cir. Aug. 22, 2017), the Ninth Circuit found that a plaintiff had waived a challenge to the factual basis for a VE's estimate of the number of available jobs in the regional and national economies because he did not raise this challenge before either the ALJ or the Appeals Council before arguing to the federal district court that the VE's job estimates "'deviated from listed sources of administrative notice.'"[2] *Id.* at *5 (internal quotation marks in original). The Ninth Circuit acknowledged that the reliability of, or evidentiary basis for, a VE's job numbers is a recurring issue in the federal courts and noted the following:

> [W]e have issued no precedential opinion concerning when a Social Security claimant must, absent a showing of good cause, challenge the evidentiary basis of a vocational expert's job numbers to preserve the issue for litigation in the district court. We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when that claimant is represented by counsel.

---

[2] In *Shaibi*, the claimant also challenged the ALJ's RFC determination in district court, but that analysis is not relevant to the issue Plaintiff presents here. *See Shaibi,* 2017 WL 3598085 at *10-12.

13

*Id.* at *6. The Ninth Circuit reasoned that this conclusion was compelled by previous decisions, particularly *Meanel,* where the circuit court emphasized that the agency – either the ALJ or the Appeals Council – as opposed to the federal court "was in the optimal position to resolve the conflict between [the claimant's] new evidence and the statistical evidence provided by the VE." *Id.* (citing *Meanel*, 172 F.3d at 1115).

*Shaibi* and *Meanel*, are dispositive here. Plaintiff was represented by counsel at both ALJ hearings. (*See* AR 49 (identifying Denise Haley as claimant attorney); 96 (Ernie Bartlett, claimant attorney); *and* Joint Stip. at 11 (acknowledging that counsel was present at the hearing).) It is undisputed that Plaintiff did not challenge, or request supplemental briefing on, the VE's job number estimates in any administrative proceedings, including those before the Appeals Council, even though the newly obtained information presented in support of her appeal, appears to have been readily accessible through internet searches of the relevant agency websites. Indeed, Plaintiff concedes that "[t]he break schedule was taken for granted by all" and, therefore, "not fully explored." (Joint Stip. at 11.) Plaintiff contends that it was only "[w]hen the vocational advisor's testimony is compared to the regulations where break periods are not required, the issue became apparent." (*Id.*)

However, Plaintiff makes no showing or argument demonstrating good cause for her failure to present this issue to the Appeals Council nor does she establish that a "manifest injustice" would ensue from a finding of waiver. *See Meanel*, 172 F.3d at 1115. Indeed, Plaintiff offers no explanation for her failure to present the Appeals Council with the publicly available information now at issue, and she has not established that the ALJ necessarily erred by relying on the VE's estimates – only that the VE's estimates are questionable given state labor laws. (*See generally* Joint Stip. at 6); *see also Angevine v. Colvin*, 542 Fed. Appx. 589, 591 (9th Cir. Oct. 16, 2013) ("in light of the clarity and nature of the legal error alleged, we find that review of the issue is 'necessary to avoid a manifest injustice'") (citing *Gregor v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006)).

Accordingly, consistent with *Shaibi* and *Meanel,* this Court finds that Plaintiff waived the issue presented here by failing to challenge to the validity of the VE's opinions about the availability of alternative jobs that Plaintiff can perform based on her RFC in the administrative appeal process.

## **ORDER**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: August 25, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE